**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES ORPHANIDIS, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| BONANZA CREEK ENERGY, INC., JAMES E. CRADDOCK, ERIC T. GREAGER, CARRIE L. HUDAK, PAUL KEGLEVIC, AUDREY ROBERTSON, BRIAN STECK, and JEFFREY E. WOJAHN, | |
| Defendants. | |

Plaintiff James Orphanidis ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bonanza Creek Energy, Inc. ("Bonanza" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Bonanza and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Bonanza and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transactions (the "Proposed Transactions") between the Company, Extraction Oil & Gas, Inc. ("Extraction"), and CPPIB Crestone Peak Resources America Inc. ("Crestone Peak").

2.      On May 9, 2021, the Company entered into an Agreement and Plan of Merger (the "Extraction Merger Agreement") with Extraction. Pursuant to the terms of the Extraction Merger Agreement, Raptor Eagle Merger Sub, Inc., a wholly owned subsidiary of Bonanza ("Raptor Eagle Merger Sub"), will merge with and into Extraction (the "Extraction Merger"), with Extraction surviving the merger as a wholly owned subsidiary of Bonanza. As a consequence of the Extraction Merger, Extraction shareholders will be entitled to receive 1.1711 shares of Bonanza common stock for each share of Extraction owned, with cash paid in lieu of the issuance of fractional shares, if any (the "Extraction Merger Consideration").

3.      Thereafter, on June 6, 2021, the Company, entered into an Agreement and Plan of Merger with Crestone Peak (the "Crestone Peak Merger Agreement" and together with the Extraction Merger Agreement, the "Merger Agreements"). Pursuant to the terms of the Crestone Peak Merger Agreement, Raptor Condor Merger Sub 1, Inc., a wholly owned subsidiary of Bonanza ("Raptor Condor Merger Sub 1"), will merge with and into Crestone Peak, with Crestone Peak surviving the merger (the "Merger Sub 1 Merger"). Following the Merger Sub 1 Merger Crestone Peak will merge with and into Raptor Conder Merger Sub 2, LLC, a wholly owned subsidiary of Bonanza ("Raptor Condor Merger Sub 2"), with Raptor Condor Merger Sub

2 continuing as the surviving entity as a wholly owned subsidiary of Bonanza (the "Merger Sub 2 Merger" and together with Merger Sub 1 Merger, the "Crestone Peak Merger"). As a consequence of the Crestone Peak Merger, Crestone Peak shareholders will have their common stock converted into the right to collectively receive 22,500,000 shares of Bonanza Creek common stock (the Crestone Peak Merger Consideration"). The closing of the Crestone Peak Merger is expressly conditioned upon the closing of the Extraction Merger. Following the completion of the Crestone Peak Merger, persons who were stockholders of Bonanza, Extraction, and Crestone Peak immediately prior to the Crestone Peak Merger will own approximately 37%, 37% and 26% of the combined company, respectively.

4.     On August 24, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transactions, the Board authorized the filing of a materially incomplete and misleading registration statement on Form S-4/A with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Bonanza and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transactions unless and until the material information discussed below is disclosed to Bonanza shareholders before the vote on the Proposed Transactions or, in the event the Proposed Transactions are consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, the owner of Bonanza shares.

10.     Defendant Bonanza is incorporated under the laws of Delaware and has its principal executive offices located at 410 17th Street, Suite 1400, Denver, Colorado 80202.  The Company's common stock trades on the New York Stock Exchange u4nder the symbol "BCEI."

11.     Defendant James E. Craddock ("Craddock") is and has been a Bonanza director at all times during the relevant time period.

12.     Defendant Eric T. Greager ("Greager") is and has been the President, Chief Executive Officer ("CEO") and a director of Bonanza at all times during the relevant time period.

13.     Defendant Carrie L. Hudak ("Hudak") is and has been a Bonanza director at all times during the relevant time period.

14.     Defendant Paul Keglevic ("Keglevic") is and has been a Bonanza director at all times during the relevant time period.

15.     Defendant Audrey Robertson ("Robertson") is and has been a Bonanza director at all times during the relevant time period.

16.     Defendant Brian Steck ("Steck") is and has been the Chairman of the Board of Bonanza at all times during the relevant time period.

17.     Defendant Jeffrey E. Wojahn ("Wojahn") is and has been a Bonanza director at all times during the relevant time period.

18.     Defendants Craddock, Greager, Hudak, Keglevic, Robertson, Steck and Wojahn are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Bonanza, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Bonanza is an independent oil and natural gas company engaged in the acquisition, exploration, development, and production of oil and associated liquids-rich natural gas in the Rocky Mountain region of the United States. The Company's assets and operations are concentrated in rural, unincorporated Weld County, Colorado, within the Wattenberg Field, focused on the Niobrara and Codell formations.

**The Company Announces the Proposed Transactions**

21.     On May 10, 2021, the Company jointly issued a press release announcing the

proposed transaction between the Company and Extraction.  The press release stated in part:

> DENVER, May 10, 2021 (GLOBE NEWSWIRE) -- Bonanza Creek Energy, Inc.
> (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ:
> XOG) ("Extraction"), today announced that they have entered into a definitive
> agreement to combine in an all-stock merger of equals. The combined company,
> to be named Civitas Resources, Inc. ("Civitas"), will be the largest pure-play
> energy producer in Colorado's Denver-Julesburg (DJ) Basin, with an aggregate
> enterprise value of approximately $2.6 billion (based on the closing share prices
> of Bonanza Creek and Extraction on May 7, 2021).

> **Transaction Highlights**

> - The merger will create a leading energy producer in Colorado's DJ Basin, a
>   basin characterized by low operating costs, extensive infrastructure, ample
>   takeaway, multiple producing horizons and responsible energy production.

> - The combined company will operate across approximately 425,000 net acres,
>   with a production base of 117 thousand barrels of oil equivalent per day (117
>   Mboe/d, on a pro forma 1Q21 production basis).

> - The transaction is expected to be significantly accretive to free cash flow and
>   other per-share metrics.

> - At closing, Civitas is projected to be one of most well-capitalized companies
>   in the industry, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt /
>   2021E EBITDA.

> - Civitas expects to achieve annual expense and capital savings of
>   approximately $25 million.

> - Bonanza Creek's recently announced annual dividend of $1.40 per share is
>   expected to be increased by Civitas to $1.60 per share effective at closing,
>   with such increase representing a distribution of approximately half of the
>   transaction synergies to Civitas' shareholder base.

> - Bonanza Creek President and Chief Executive Officer, Eric Greager, will
>   serve as President and CEO of Civitas. Other senior leadership positions will
>   be filled by current executives of Bonanza Creek and Extraction.

> - Extraction Chairman of the Board, Ben Dell, will serve as Chairman of
>   Civitas, and each of Bonanza Creek and Extraction will nominate four
>   directors to Civitas' diverse, eight-member Board.

- Civitas will take to the next level an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance.

- At closing, Civitas will be Colorado's first net-zero oil and gas producer (scope 1 and scope 2) through an intensive, continuing focus on reducing operational emissions and a multi-year investment in certified emissions offsets.

*      *      *

**Transaction Details**

Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza Creek common shares for each share of Extraction common stock owned on the closing date. Based on the exchange ratio and the closing price of Bonanza Creek's common stock on May 7, 2021, Civitas would have an aggregate enterprise value of approximately $2.6 billion. Upon completion of the transaction, Bonanza Creek and Extraction shareholders will each own approximately 50.0% of Civitas, both on a fully diluted basis.

The transaction, which is expected to close in the third quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by Kimmeridge Energy own approximately 38% percent of the outstanding shares of Extraction and have entered into a support agreement to vote in favor of the transaction. The closing of the merger is subject to customary closing conditions, including approvals by Bonanza Creek and Extraction shareholders.

**Strategic Rationale**

- **Enhanced scale and geographic breadth** – Civitas will be the largest pure-play energy producer in the DJ Basin with current production of 117 thousand barrels of oil equivalent per day (117 Mboe/d) and approximately 425,000 net acres. These operations are geographically diversified across rural, less regulatory-intensive areas, as well as more prospective suburban acreage.

- **Acceleration of cash returns to shareholders** – Civitas represents the next level of an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, and is defined by capital discipline, low cost structure, and a strong balance sheet to maximize free cash flow and accelerate the distribution of a material portion of this cash to shareholders. Disciplined reinvestment rates are expected to yield flat to low production growth in the coming years and generate sufficient free cash flow to support

material dividends going forward. Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.

- **Strong balance sheet and liquidity** – The all-stock transaction ensures Civitas will retain a strong balance sheet, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA, at the time of closing, and Civitas will target leverage of approximately 0.5x over the longer term. Civitas will also have significant liquidity. As of April 1, 2021, Bonanza Creek and Extraction had combined cash on hand of $127 million and combined undrawn capacity under their credit facilities of $651 million. The resulting enhanced credit profile is expected to broaden the combined company's access to the capital markets and reduce its overall cost of capital.

- **Advances consolidation strategy** – Civitas represents a major step in Bonanza Creek's and Extraction's consolidation strategies, which have been pursued in conjunction with the companies' continuing initiatives to reduce unit costs, expand margins, enhance returns, increase financial strength, and grow cash distributions to shareholders. Civitas will be positioned to be the preferred consolidation partner for additional transactions in the DJ Basin, helping to increase its trading liquidity and market relevance, and ultimately to elevate its presence among the top energy producers in the country.

- **Industry-leading commitment to ESG excellence and values** – Civitas will expand on the ESG initiatives pursued by both Bonanza Creek and Extraction, including its commitment to become Colorado's first net-zero oil and gas producer at closing, through continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets. Civitas will pursue additional sustainability objectives including the adoption of an electric vehicle (EV) fleet; installation of EV charging stations in its communities; air monitoring and certification through leading organizations such as Project Canary and pursuit of the Responsibly Sourced Gas certification for its natural gas production; the development of community solar facilities; and the financing of a community fund to sponsor local project grants and scholarships. Upon close, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, service providers, and the communities in which the combined company operates.

**Governance and Leadership**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including:

Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor and Vinson & Elkins LLP is serving as legal advisor to Bonanza Creek. Petrie Partners Securities, LLC is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to Extraction.

22.    On June 7, 2021, the Company jointly issued a press release announcing the proposed transaction between the Company and Crestone Peak.  The press release stated in part:

> DENVER, June 07, 2021 (GLOBE NEWSWIRE) -- Civitas Resources, Inc. ("Civitas" or the "Company"), a Colorado energy leader that will be formed upon closing of the recently-announced merger of Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ: XOG) ("Extraction"), today announced that it has materially advanced its consolidation strategy in the Denver-Julesburg (DJ) Basin by entering into a definitive agreement to acquire Crestone Peak Resources ("Crestone"), another leading energy producer in the region. Civitas is expected to have an enterprise value of approximately $4.5 billion (based on the closing market equity capitalizations of Extraction and Bonanza Creek as of June 4, 2021), and will be optimally positioned to increase efficiencies through combining operations across more than half a million net acres and an estimated production base of approximately 160,000 barrels of oil equivalent per day.

> The agreement to acquire Crestone represents the most recent initiative in Civitas' execution of the new E&P business model that has been actively embraced by each of Bonanza Creek and Extraction. The model is defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance. Civitas is also proud that, inclusive of the Crestone assets, it will be Colorado's first carbon neutral oil and gas producer (scope 1 and scope 2) upon closing, advancing its net-zero goals.

> **STRATEGIC RATIONALE**

> • The acquisition of Crestone will strengthen the strategic rationale underlying the formation of Civitas, as it is projected to enhance the Company's scale, in-basin diversification, balance sheet, and liquidity profile. Civitas will have established itself as the preferred consolidation partner in the target-rich DJ Basin, which will help increase its trading liquidity and market relevance, and ultimately elevate its presence among top energy producers in the country.

- With the addition of Crestone, Civitas will operate across more than half a million net acres, with leasehold positions in all key areas of the DJ Basin. The Company will also have an estimated production base of approximately 160,000 barrels of oil equivalent per day (on a pro forma 1Q21 production basis) and YE20 SEC proved reserves of more than 530 MMBoe.

- Crestone's primary shareholder is Canada Pension Plan Investment Board ("CPP Investments"). CPP Investments will become Civitas' largest shareholder and will designate one member to the Civitas board upon closing.

- Civitas is committed to returning capital to shareholders through increased dividends and anticipates that the previously announced Civitas annual dividend of $1.60/share will be increased to $1.85 at closing, with the continued potential for additional increases, share repurchases and special dividends.

- The acquisition of Crestone is expected to be accretive on all 2022 estimated key metrics, including cash flow per share, dividends per share, inventory quality, credit profile and cost of capital. Civitas, pro forma for the Crestone transaction, is expected to generate more than $1.3 billion in 2022E EBITDA and more than $575 million in 2022E free cash flow.

- Civitas expects to target flat to low production growth with moderate cash flow reinvestment.

- The Company's enhanced financial profile is expected to accelerate cash returns to shareholders. The integration of Crestone is expected to result in approximately $45 million of annual synergies, in addition to approximately $25 million in annual synergies associated with the Bonanza Creek/Extraction merger.

- The acquisition of Crestone will further advance Civitas' industry-leading ESG strategy, demonstrated by the Company's commitment to achieve net-zero emissions. Civitas has an intensive, continuing focus to reduce operational emissions and a multi-year investment in certified emissions offsets.

- Upon closing, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, and service providers.

- Civitas was created with the goal of operating in partnership with, and delivering unprecedented value to, its communities. To that end, Civitas is committed to demonstrating industry-leading alignment with its community stakeholders through transparent communication, safe and responsible operations, and innovative community projects.

## COMMENTARY

Eric Greager, President and Chief Executive Officer of Bonanza Creek, said, "We are actively building one of the most durable and profitable producers in the DJ Basin. Our combination with Crestone is just one early marker of what we hope to achieve as Civitas, as we establish ourselves as the preferred consolidation partner in the DJ Basin and work toward becoming one of the top energy producers in the nation."

Tom Tyree, Chief Executive Officer of Extraction, said, "Crestone brings to Civitas complementary, premium assets at the front end of the cost curve, along with common organizational and community values, including an aggressive commitment to sustainability. We look forward to creating significant value for all stakeholders and furthering Civitas' standing as an ESG leader among oil and gas producers in Colorado."

Tony Buchanon, President and Chief Executive Officer of Crestone, said, "The benefits of in-basin consolidation are compelling, and we are pleased to become part of the dynamic enterprise that is Civitas. Crestone has long been a leader in safety and sustainability issues, and we look forward to continuing that leadership at Civitas."

"Over the past five years of our investment in Crestone, the company has demonstrated its commitment to operational strength and efficiency, along with its introduction of innovative sustainability practices. The combination of Crestone with Civitas creates a stronger platform in the DJ Basin with significant free cash flow and the potential to continue value creation," said Michael Hill, Managing Director and Americas Head of Sustainable Energy, CPP Investments.

## GOVERNANCE AND TRANSACTION DETAILS

Following the closing of the transaction with Crestone, Civitas' board of directors will increase from eight to nine. Each of Bonanza Creek and Extraction will designate four directors, with CPP Investments designating one director. All board members will stand for re-election annually. As previously announced, Bonanza Creek President and Chief Executive Officer, Eric Greager, will serve as President and CEO of Civitas.

"Our board will reflect exceptional competence, diversity, and governance standards, consistent with our focus on share price performance and our commitment to industry-leading sustainability practices. We also warmly welcome a CPP Investments director designee to Civitas," commented Ben Dell, current Chair of the Board of Extraction, who will serve as Chair of Civitas.

Under the terms of the definitive agreement, shareholders of Crestone will exchange 100% of the equity interests in Crestone for approximately 22.5 million

shares of Bonanza Creek common stock. Upon completion of the all-stock transaction, Bonanza Creek and Extraction shareholders will each own approximately 37% of Civitas and Crestone shareholders, including CPP Investments, will own approximately 26% of Civitas. The Company will be headquartered in Denver, Colorado.

The Crestone transaction, which is expected to close immediately following the Bonanza Creek/Extraction merger in the fall of 2021, has been unanimously approved by the boards of directors of Bonanza Creek, Extraction and Crestone, and fully approved by Crestone's shareholders. Kimmeridge Energy and CPP Investments have entered into support agreements to vote in favor of the transaction. The transaction is subject to customary closing conditions, including approvals by Bonanza Creek shareholders and consummation of the Bonanza Creek / Extraction merger.

**ADVISORS**

J.P. Morgan Securities LLC is serving as financial advisor and Vinson & Elkins LLP is serving as legal advisor to Bonanza Creek. Petrie Partners Securities, LLC is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to Extraction. Jefferies LLC is serving as lead financial advisor, TD Securities (USA) LLC is serving as financial advisor, and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Crestone.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

23. On August 27, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transactions.

24. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transactions, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material
## <u>Misrepresentations or Omissions Regarding the Financial Projections</u>

25.     The Registration Statement contains projections prepared by the Company's and Just Eat's management concerning the Proposed Transactions, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to all sets of projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Levered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

29.     The Registration Statement fails to disclose any financial projections prepared by the Company's management in connection with the Proposed Transactions. Any such projections should be disclosed to the Company's shareholders.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transactions.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

31.     The Registration Statement contains information concerning the background of the Proposed Transactions, but fails to disclose material information concerning such.

32.     First, the Registration Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between Bonanza and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

33.     The Registration Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

34.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transactions.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

35.     The Registration Statement contains the financial analyses and opinion of J.P. Morgan Securities LLC ("J.P. Morgan") and Petrie Partners Securities, LLC ("Petrie Partners") concerning the Proposed Transactions, but fails to provide material information concerning such.

36.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed by J.P. Morgan in the analysis.

37.     With respect to J.P. Morgan's *Net Asset Value Analysis*, the Registration Statement fails to disclose: (i) the Company and Extraction's present value, as of March 31, 2021; (ii) the inputs and assumptions underlying J.P. Morgan's use of the range of discount rates from 12.25% to 14.25%; (iii) the number of fully diluted shares outstanding of Extraction and Bonanza common stock; and (iv) the weighted average cost of capital of Bonanza.

38.     With respect to Petrie Partners' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the use of after-tax discount rates ranging from 8% to 35%; (ii) estimated long term debt as of March 31, 2021; and (iii) estimated net working capital as of March 31, 2021; and (iv) the number of fully diluted shares for each of the companies.

39.     With respect to Petrie Partners' *Property Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

40.     With respect to Petrie Partners' *Capital Market Comparison Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

41.     With respect to Petrie Partners' *Corporate Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

42.     With respect to Petrie Partners' *Going Concern Analysis*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying Petrie Partners' application of multiples used in the analysis; and (ii) the individual inputs and assumptions underlying Petrie Partners' use of the discount rates in the analysis.

43.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

44.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transactions. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transactions.

51.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreements and the preparation of the Company's financial projections.

53.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transactions.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

55.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.    The Individual Defendants acted as controlling persons of Bonanza within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Bonanza, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transactions. They were thus directly involved in preparing this document.

59.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreements. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transactions;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

      C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

      D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 13, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*